UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Cecilia Tillman,

       Plaintiff,

v.                                                                      Case No. 11-10994

Macy's Inc.,                                                    Honorable Sean F. Cox

       Defendant.

_____/

**OPINION & ORDER DENYING**
**DEFENDANT'S MOTION TO COMPEL ARBITRATION**

       Acting *pro se*, Plaintiff Cecilia Tillman ("Tillman" or "Plaintiff") filed this action against

her former employer, Defendant Macy's, Inc. ("Defendant"). Defendant filed a motion, asking

this Court to compel Plaintiff to arbitrate her claims and stay this action pending arbitration. The

parties have fully briefed the issues and the Court held hearings on the motion on September 29,

2011, and November 15, 2011. For the reasons set forth below, the Court shall DENY the

motion.

**BACKGROUND**

**A.        Procedural Background**

       Acting *pro se*, Plaintiff filed this action against Defendant, alleging that it discriminated

against her on the basis of her race in violation of Title VII of the Civil Rights Act of 1964 when

it terminated her employment in December of 2009. (*See* Pl.'s Compl.). This Court granted

Plaintiff's application to proceed *in forma pauperis*, but denied her request for appointment of

1

counsel.  (*See* Docket Entry Nos. 4 & 6).

Attached to Plaintiff's Complaint is the Charge of Discrimination that Plaintiff filed with the Michigan Department of Civil Rights and the United States Equal Employment Opportunity Commission ("EEOC") on December 18, 2009. (Docket Entry No. 1, Page ID 3).  Plaintiff filed that Charge of Discrimination alleging that Macy's North in Westland, Michigan discriminated against her based upon her race and that the discrimination occurred from December 2, 2009 through December 15, 2009.  On December 16, 2010, the EEOC issued Plaintiff a Right to Sue Notice.  (Docket Entry No. 1 at Page ID 5).  Plaintiff filed this action on March 14, 2011.

On May 27, 2011, Defendant filed a "Motion to Compel Arbitration and Stay the Action Pending Arbitration."  (Docket Entry No. 11).  On June 16, 2011, this Court set that motion for hearing on September 29, 2011.  (Docket Entry No. 12).  On July 21, 2011, Plaintiff filed a written response in opposition to Defendant's Motion to Compel Arbitration.  (Docket Entry No. 14).

After the parties had completed the briefing on Defendant's motion, the United States Court of Appeals for the Sixth Circuit issued *Hergenreder v. Bickford Senior Living Group, LLC,* __ F.3d __, 2011 WL 3805613 (6th Cir. August 30, 2011).

On September 29, 2011, this Court held a hearing on Defendant's Motion to Compel Arbitration.  Because the parties were not familiar with *Hergenreder*, the Court adjourned the hearing until November 15, 2011, and ordered supplemental briefing in light of that case. Specifically, the Court ordered:

1)      Defendant shall specify the following:

   a)      the alleged "offer" that was made to Plaintiff (i.e., which written document contains or constitutes the alleged "offer");

2

b)     when Plaintiff received that alleged offer and the evidence in the record establishing that Plaintiff received that alleged offer;

d)     whether Plaintiff was required to read the document that contained or constitutes the alleged offer; and

e)     how and when Plaintiff "accepted" the alleged offer.

2)     Can Defendant direct the Court to any Michigan or Sixth Circuit authority that supports Defendant's contention that Plaintiff assented to arbitration by not returning an opt-out form (i.e., by silence or inaction)?

3)     The plaintiff in *Hergenreder* opposed the motion to compel arbitration, arguing that she did not agree to arbitration and that she did not agree to waive her right to a jury trial.  The Sixth Circuit concluded that the plaintiff did not enter into an arbitration agreement under Michigan law and, that *even if she did*, the plaintiff did not knowingly and voluntarily waive her right to a jury trial under federal law.  As the Court reads her *pro se* responses, Ms. Tillman makes both of those arguments in this action.  In light of *Hergenreder*, Defendant shall respond to Ms. Tillman's argument that she did not agree to waive her right to a jury trial.

(Order for Supplemental Briefing, Docket Entry No. 25).

**B.     Factual Background**

Plaintiff was hired by the May Department Stores Company on December 1, 2001.  The May Department Stores Company owned stores under the Marshall Field's name, among others. (Noeth Aff. at ¶ 14).

In 2005, the May Department Stores Company merged with Macy's Retail Holdings, Inc. (Noeth Aff. at ¶ 14).

In June 2007, Federated Department Stores, Inc. changed its corporate name to Macy's Inc.  (Noeth Aff. at ¶ 2).  Macy's Inc. is the parent company to Macy's Retail Holdings, Inc.

3

(Noeth Aff. at ¶ 2)

Macy's Retail Holdings, Inc. operates stores in Michigan, including the Macy's Northland Store in Southfield, Michigan where Plaintiff worked at the time she was hired, and the Macy's Westland store in Westland, Michigan where Plaintiff worked at the time she was terminated. (Noeth Aff. at ¶ 2)

During 2003, Federated Department Stores, Inc. developed and implemented a dispute resolution program called the Solutions InSTORE Program. (Noeth Aff. at ¶ 4). This program has four steps. The fourth and last step is binding arbitration. In 2003, however, Plaintiff was still employed by May Department Stores Company – so Plaintiff was not included in the 2003 rollout.

In 2005, the May Department Stores Company merged with Macy's Retail Holdings, Inc. and Defendant claims that Plaintiff became a Macy's Retail Holdings, Inc. employee in 2005.

In 2006, Defendant[1] implemented a roll-out of the program to all former May employees. "Each division was directed to set up informational sessions with their employees" and "[a]t these meetings, employees were given the Early Dispute Resolution brochure, which summarized the terms of the Program." (Def.'s Br. at 4).

Defendant claims that Plaintiff attended one such informational meeting. It submitted a portion of a sign-in sheet that Plaintiff signed that appears to indicate she attended a meeting on

_____

[1]Defendant uses the term "Macy's" throughout Noeth's Affidavit. *See* Noeth Affidavit at ¶ 2) ("I will refer to Macy's throughout, even though at the time of some of the events described the corporate entity was Federated.").

October 13, 2006.  (Ex. F to Def.'s Br.).[2]  That sheet does not indicate whether or not Plaintiff

received any written materials during that meeting.

Defendant states that it conducted a mailing regarding the Program on September 20,

2006, which "included a 'Welcome to Solutions inStore' postcard, the Plan Document, an Early

Dispute Resolution Program Election Form (the 'October 2006 Election Form'), and a pre-

addressed, postage-paid return envelope (which was secured attached in the middle of the Plan

Document).  All these documents were in one envelope."  (Noeth Aff. at ¶ 22).  The "Welcome

Postcard" is attached as Exhibit G and the October 2006 Election Form is attached as Exhibit H.

(*Id.*).  The Welcome Postcard states:

> Here at Federated, we believe in creating the best work environment and a part of
> that is Solutions InStore.
> By now you should have already been introduced to Solutions InSTORE through
> meetings at your location.  You should have also received a brochure – like the
> one pictured to the right.  Enclosed you will find additional information including
> the Plan Document. Please take the time to read over this material and if you have
> any questions regarding the program, talk to your manager or your human
> resources representative who will be happy to help you.
> At Federated teams win.  Thanks for being a part of our team.  We're glad you are
> here!

(Ex. G).

The "Early Dispute Resolution Program Election Form" states, at the bottom portion of

the form:

> You are covered by all 4 - Steps of the program when you take or continue a job
> with us.  That means that if you have any concerns or claims about working here,
> Solutions InSTORE is the way to get them resolved.  You have the option to

---

[2]Plaintiff does not dispute that she attended company meetings (*see* D.E. No. 21 at 2) but
states that she never agreed to waive her right to a jury trial.

exclude yourself from being covered by Step 4, Arbitration and its benefits.

Complete and return this form ONLY IF YOU **DO NOT** WANT TO BE COVERED BY THE BENEFITS OF ARBITRATION UNDER SOLUTIONS INSTORE.  **In this case, your completed form must be returned to the Office of Solutions InSTORE and postmarked no later than October 31, 2006.**  We will send you confirmation that your form was received. If you do not receive confirmation by December 31, 2006, please send an e-mail to solutions.instore@fds.com . . .

   **[ ]      I Decline The Benefits of Arbitration**
         I have read all the information about Solutions InStore and I elect NOT to stay covered by Arbitration.

   **AUTHORIZATION I have read and understand the program information.  I voluntarily agree that I am waiving the ability to participate in Step 4 of the Solutions InSTORE program.  Please keep a copy of this form**.

   I _____ on _____ understand that my election as of this date is binding for the duration of my employment with Federated Department Stores, Inc. and after my employment ends.

(Ex. H).

      Defendant did not attach a copy of the 2006 Plan Document.  It did attach, however, a

copy of a Plan Document dated January 1, 2007.  The Plan Document dated January 1, 2007,

includes the following:

   All Associates agree to be covered by Step 4 – Arbitration by accepting or continuing employment with the Company after the Effective Date.  Associates are given the option to exclude themselves from Arbitration by completing an election form within the prescribed time frame.  Until and unless an Associate elects to be excluded from arbitration within the prescribed time frame, the Associate is covered by Step 4 – Arbitration.

(Exhibit A).

      Defendant contends that Plaintiff was on the September 20, 2006 mailing list so that the

packet with the Plan Document was sent to her at her last known address at that time.  Defendant

states that Plaintiff's  packet was not returned as undeliverable.  Defendant states that no election

form was received from Plaintiff.

Defendant states that in early 2007, it sent employees who had not returned the October

2006 Election Form a brochure welcoming them to the program.  A copy of that brochure is

attached as Exhibit L.  Defendant contends that Plaintiff was sent this brochure.

Defendant contends that on October 9, 2007, former May employees were given a second

opportunity to opt out of the program.  (Noeth Aff. at ¶  at 38).  "The Fall mailing included a

"We've Got You Covered" brochure, an "Opening the Door to More Information" newsletter, a

new Election Form with a postmark deadline of November 15, 2007, and a pre-addressed

postage-paid return envelope."  (Noeth Aff. at ¶  41).  A copy of the current Plan Document was

not included in the mailing.  The brochure is attached as Exhibit N, the newsletter is attached as

Exhibit O, and the election form is attached as Exhibit P.  The election form contains the same

kind of language as the earlier one, but states that it applies to the employee's employment with

Macy's Inc., rather than Federated.

## ANALYSIS

I.   **Defendant's Motion To Compel Arbitration and Stay This Action Pending Arbitration**

Defendant contends that the parties have a valid and enforceable agreement to arbitrate

and asks this Court to compel Plaintiff to arbitrate the employment discrimination claim she

asserts in this action.  Defendant further asks that this Court stay this action pending arbitration.

The Court shall deny the motion.  The Court concludes that, under *Hergenreder,* Plaintiff

7

did not agree to arbitrate.  In addition, even if she did, the Court concludes that Plaintiff did not

waive her right to a jury trial under federal law.

### A.    Was A Valid Arbitration Agreement Formed Under Michigan Law?

The Federal Arbitration Act provides for a stay of proceedings when an issue is referable

to arbitration and for orders compelling arbitration when one party has failed or refused to

comply with an arbitration agreement.  *Hergenreder, supra,* at *4.  Before compelling an

unwilling party such as Plaintiff to arbitrate, "the court must engage in a limited review to

determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists

between the parties" and that the claim at issue falls within the scope of that agreement.  *Id*.

Because arbitration agreements are fundamentally contracts, the Court reviews the enforceability

of an agreement according to the applicable state law of contract formation.   *Id.*

Accordingly, the Court looks to Michigan law to analyze whether there is a valid

agreement to arbitrate.  As explained in *Hergenreder:*

> Under Michigan law, "Before a contract can be completed, there must be an offer
> and acceptance."  *Pakideh v. Franklin Commerical Mortg. Grp., Inc*., 540
> N.W.2d 777, 780 (Mich. Ct. App. 1995); *see also Kamalnath v. Mercy Mem'l
> Hosp. Corp.,* 487 N.W.2d 499, 503 (Mich. Ct. App. 1992) ("A contract is made
> when both parties have executed or accepted it, and not before.").  "An offer is
> defined as the manifestation of willingness to enter into a bargain, so made as to
> justify another person in understanding that his assent to that bargain is invited
> and will conclude it."  *Kloian v. Domino's Pizza L.L.C.*, 733 N.W.2d 766, 770
> (Mich. Ct. App. 2006) (internal quotation marks omitted).  Similarly, "an
> acceptance sufficient to create a contract arises where the individual to whom an
> offer is extended manifests an intent to be bound by the offer, and all legal
> consequences flowing from the offer, through voluntarily undertaking some
> unequivocal act sufficient for that purpose."  *Id*. at 771.

*Hergenreder*, *supra*, at * 5.

Beyond the above requirements, the elements of a valid contract in Michigan also include: 1) parties competent to contract; 2) a proper subject matter; 3) a legal consideration; 4) mutuality of agreement; and 5) mutuality of obligation. *Hergenreder, supra,* at * 5 (citing *Hess v. Cannon Twp*., 696 N.W.2d 742, 748 (Mich. Ct. App. 2005)). "Whether the parties have mutually agreed to be bound 'is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind.'" *Id.*

Defendant, as the party seeking to enforce the alleged agreement to arbitrate, has the burden of showing that a valid agreement to arbitrate exists. Defendant has not met that burden here.

Defendant's position is that it conveyed the details of the program to employees and allowed them to opt-out of mandatory arbitration. Defendant contends that "by choosing not to return the 'opt-out' Election Forms, despite the opportunity to do so, and by not contesting the confirmatory communications, Ms. Tillman manifested her consent to participate in the provisions of the Program requiring all employment disputes to be arbitrated." (Def.'s Br. at 9).

In *Hergenreder,* the district court concluded that the plaintiff was bound by the arbitration terms in a company document because it found that the plaintiff was "reasonably notified of the DRP and [she] elected to accept and continue her employment." *Hergenreder, supra,* at *5. The Sixth Circuit disagreed – finding that "[t]here was neither an offer nor acceptance."

The plaintiff in *Hergenreder* signed an acknowledgment that she had read and understood the terms of an employee handbook when she began her employment with the defendant. That handbook stated that it was not a contract. The handbook referred employees to

9

another document, the Eby Companies Dispute Resolution Procedure ("DRP"), regarding the dispute resolution process. *Id.* The plaintiff argued that although she acknowledged reading and understanding the handbook, neither the handbook nor the specific reference to the DRP constitutes an agreement. The defendant argued that the DRP formed the contract and that the plaintiff "assented" to the DRP.

The Sixth Circuit agreed with the plaintiff noting that the "key analytical step in [defendant's] argument comes from the notion that [defendant] needed only to 'reasonably notif[y] [plaintiff] of the arbitration agreement, which it did, [defendant] argues, by requesting that [plaintiff] 'Please refer to the Eby Companies Dispute Resolution Procedure (DRP) for details.'" *Id.* at *6. The court concluded that there was "neither an offer nor an acceptance," and stressed that the plaintiff was not required to read the DRP – the document that was the alleged offer. *Id.*

Here, Defendant contends that "the Plan Document" constitutes the offer to arbitrate made to Plaintiff:

> 5.    Macy's Offer to Arbitrate. As shown herein, Macy's made an offer to Plaintiff for mutually binding arbitration under Step 4 of Macy's Solutions InSTORE dispute resolution program (the "SIS Program") that was contained in the Plan Document.

(Def.'s Supp. Br. at 2).

Defendant's motion states that Plaintiff was on the September 20, 2006 mailing list so that the packet containing the Plan Document was sent to her at her last known address at that time. But notably absent from Defendant's exhibits is a copy of the actual "Plan Document" that was allegedly sent to employees *in 2006.* The only "Plan Document" attached is one dated *January 1, 2007* – after the September 2006 mailing (and that version of the Plan Document is

10

from Macy's, Inc. – not Federated.).   (Def.'s Exhibit A).

Even if Plaintiff had been sent the Plan document that Defendant attaches to its brief, there is nothing in the record before this Court that establishes that Plaintiff was required to read the Plan Document. *See Hergenreder, supra,* at * 6 (stressing that the plaintiff was not required to refer to or read the document containing the arbitration provision.).  This Court specifically asked Defendant to specify whether "Plaintiff was required to read the document that contains or constitutes the alleged offer," and Defendant did not identify any evidence indicating she was required to read the Plan Document.  Rather, Defendant simply states that Plaintiff was "directed" to read the Plan Document.  (Def.'s Suppl. Br. at 10).

Defendant contends that Plaintiff accepted its offer to arbitrate by failing to return an opt-out form.  Defendant directs the Court to *Legair v. Circuit City Stores, Inc*., 213 Fed. Appx. 436 (6th Cir. 2007) in support of its position that Plaintiff's failure to opt out is sufficient to establish that she agreed to arbitration. In that case, the Sixth Circuit affirmed a district court's granting of a motion to compel arbitration.  Circuit City had an arbitration program similar to Macy's program, where the employees were bound unless they opted out.  The case can be distinguished from this case, however, in that the plaintiff in that case "signed a form indicating that he understood his obligations in respect to the opt-out provision." *Id*. at 437.  The court concluded that the plaintiff's conduct demonstrated his agreement to be bound:

> . . . the plaintiff here signed a form indicating that he understood his obligations if he chose not to participate in the program.  He then failed to take the required action to opt out.  Further, he never informed management that he did not accept the program.  The district court correctly found that plaintiff by his conduct demonstrated his agreement to be bound.

*Id*. at 439.

Defendant contends that "Macy's could only interpret Plaintiff's failure to opt out" as Plaintiff assenting to arbitration. That is not the only possibility where, as here, the Plaintiff was not required to read the document that constitutes the offer and she did not sign anything acknowledging that she understood she was agreeing to arbitration. Under these facts, her failure to send in an opt out form could simply be the result of her not having read the Plan Document that contains the alleged offer to arbitrate. This is especially so, given that the company was changing ownership and Plaintiff was receiving many mailings from her employer.

The Court concludes that, under *Hergenreder,* Plaintiff did not agree to arbitrate. In addition, even if she did, like the situation in *Hergenreder,* the Court concludes that Plaintiff did not knowingly and voluntarily waive her right to a jury trial under federal law.

### B.    Did Plaintiff Waive Her Right To A Jury Trial Under Federal Law?

If a plaintiff's "claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes." *Hergenreder, supra*, at *9 (citing *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 506 (6th Cir. 2004)). The question of right to jury trial is governed by federal law, not state law. *Hergenreder*, *supra*, at *9.

In *Hergenreder,* the Sixth Circuit concluded that the plaintiff in that case did not enter into an arbitration agreement under Michigan law. It further held that *even if she did*, the plaintiff did not knowingly and voluntarily waive her right to a jury trial and therefore the district court erred in compelling arbitration.

Although she is proceeding *pro se*, like the plaintiff in *Hergenreder,* Plaintiff opposes the Motion to Compel Arbitration, asserting that she did not agree to waive her right to a jury trial. Plaintiff states that an "agreement to arbitrate may lead to renunciation by the parties of their

12

constitutional right to have their disputes decided in court." (*See* D.E. No. 21 at 2). She asserts

that she was "employed at a company that changed hands on three separate occasions and was

inundated with volumes of material each time without explanation." (*Id*.). She states that she

"swears and Affirms that she [ ] never consented to surrendering her constitution[al] rights to a

racial discrimination case settled in arbitration as opposed to bringing the matter before a judicial

court system." (*Id*.). She further asserts that Defendant did not "fully inform the employees of

the consequences of 'opting out' as a clear choice to preserve their" "right to have a trial by

jury." (*Id*.).

Under federal law, the following factors are used to determine "whether a waiver of the

right to a jury trial has been knowing and voluntary:

> (1) plaintiff's experience, background, and education; (2) the amount of time the
> plaintiff had to consider whether to sign the waiver, including whether the
> employee had an opportunity to consult with a lawyer; (3) the clarity of the
> waiver; (4) consideration for the waiver; as well as (5) the totality of the
> circumstances.

*Hergenreder, supra,* (quoting *Morrison v. Circuit City Stores, Inc*., 317 F.3d 646, 668 (6th Cir.

2003). Here, several of these factors weigh against a finding of knowing and voluntary waiver.

First, Plaintiff never signed any written waiver.

Second, Defendant's proposed waiver (i.e., the opt-out form) has, in this Court's opinion,

confusing language as to what the employee is agreeing to. Instead of simply stating, I do not

agree to binding arbitration and do not wish to waive my right to a jury trial, it repeatedly states I

am "declining the benefits of arbitration." For example, the bottom portion reads as follows:

> You are covered by all 4 - Steps of the program when you take or continue a job
> with us. That means that if you have any concerns or claims about working here,
> Solutions InSTORE is the way to get them resolved. You have the option to

13

exclude yourself from being covered by Step 4, Arbitration and its benefits.

Complete and return this form ONLY IF YOU **DO NOT** WANT TO BE COVERED BY THE BENEFITS OF ARBITRATION UNDER SOLUTIONS INSTORE.  **In this case, your completed form must be returned to the Office of Solutions InSTORE and postmarked no later than October 31, 2006.**  We will send you confirmation that your form was received. If you do not receive confirmation by December 31, 2006, please send an e-mail to solutions.instore@fds.com . . .

**[ ]      I Decline The Benefits of Arbitration**
          I have read all the information about Solutions InStore and I elect NOT to stay covered by Arbitration.

**AUTHORIZATION I have read and understand the program information.  I voluntarily agree that I am waiving the ability to participate in Step 4 of the Solutions InSTORE program.  Please keep a copy of this form**.

I _____ on _____ understand that my election as of this date is binding for the duration of my employment with Federated Department Stores, Inc. and after my employment ends.

(Ex. H).

Third, the totality of the circumstances weighs against a finding of a knowing and voluntary waiver here where: 1) Plaintiff received numerous mailings from employer during changes in corporate ownership; 2) Plaintiff was not required to read the Plan Document that contains the alleged offer or the proposed waiver; and 3) Plaintiff never signed or acknowledged any form indicating that she received the Plan Document or that she understood that she was waiving her right to trial by not sending in an opt-out form.  Under these circumstances, Plaintiff's silence cannot be construed as a "knowing and voluntary" waiver of her right to jury trial.

CONCLUSION & ORDER

14

For the reasons set forth above, IT IS ORDERED that Defendant's Motion to Compel Arbitration is DENIED.

IT IS SO ORDERED.


Dated: December 21, 2011                              S/ Sean F. Cox_____
                                                     Sean F. Cox
                                                     U. S. District Court Judge



I hereby certify that on December 21, 2011, the foregoing document was served upon counsel of record by electronic means and upon Cecilia Tillman by First Class Mail at the addresses below:

Cecilia Tillman
7000 W. Parkcrest Drive, Apt. 102
Westland, MI 48185

Cecilia Tillman
4571 Korte
Dearborn, MI 48126

Dated: December 21, 2011                              S/ Jennifer Hernandez_____
                                                     Case Manager